## ORTEGA v̇. SALT LAKE WET WASH LAUNDRY et al.

No. 6686.   Decided February 20, 1945.   (156 P. 2d 885.)

1

2

4

See 42 C. J. S. Infants, Sec. 106, and Infants 27 Am. Jur. 836.

Applicability and effect of workmen's compensation act in cases of injury to minors, notes, 14 A. L. R. 818; 33 A. L. R. 337; 49 A. L. R. 1435; 60 A. L. R. 847; 83 A. L. R. 416; 142 A. L. R. 1018. See, also, 28 R. C. L. 766.

*White, Wright & Arnovitz,* of Salt Lake City, for appellant.

*Dan B. Shields,* of Salt Lake City, for respondents.

LARSON, Chief Justice.

Is the Workmen's Compensation Act the exclusive remedy for a minor illegally employed, who is injured in the course of employment? That is the only question presented by this appeal from a judgment of the District Court of Salt Lake County dismissing plaintiff's complaint. Lupe Ortega a girl fourteen years of age, was employed by defendants, from February 1943, to April 8, 1943. On the date last mentioned she was required and directed to work on and operate a power driven machine, to wit, an electrically

driven mangle. On said date while so working her hand was crushed in the mangle as a result of which she lost the three fingers and the distal phalanx of her right hand. She filed suit for damages. The defendants demurred, which demurrer the court sustained and, dismissed the action on the ground that the Workmen's Compensation Act is the exclusive remedy for an injured employee, and therefore a civil suit for damages would not lie. Plaintiff appeals, presenting for our decision the question posed above.

The Workmen's Compensation Act, Sec. 42-1-57, U. C. A. 1943, provides:

"The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer, except as in this title otherwise declared; provided, that where the injury is caused by the employer's willful misconduct and the act causing such injury is the personal act of the employer himself, or if the employer is a partnership, of one of the partners, or if a corporation, of an elective officer or officers thereof, and such act indicates a willful disregard of the life, limb or bodily safety of employees, such injured employee or other person damaged may, at his option, either claim compensation under this title or maintain an action at law for damages. The term 'willful misconduct,' as employed in this section shall be construed to mean an act done knowingly and purposely with the direct object of injuring another."

There are two exceptions to the exclusive remedy provision by Title 42: (a) The exceptions noted in the provided part of this section, and (b) in the case of a noncomplying employer, Sec. 42-1-54, U. C. A. 1943. To the effect that a proceeding under the provisions of the act otherwise is the sole remedy of the injured employee, see *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940; *Shurtliff* v. *Oregon S. L. Ry. Co.*, 66 Utah 161, 241 P. 1058; *Halling* v. *Ind. Comm.*, 71 Utah 112, 263 P. 78; *Utah Idaho Cent. Ry. Co.* v. *Ind. Comm.*, 84 Utah 364, 35 P. 2d 842, 94 A. L. R. 1423.

The trial court upheld the contention of the laundry

and took the view that the case came within the first provision of the section quoted. The plaintiff assails such holding, and contends that she does not come within the restrictive first clause, because: (1) She was not an "employee" within the meaning of the act; and (2) if she was an employee she was taken out of the limitation of the first clause by the exceptions following the term "provided" in Sec. 42-1-57 quoted above, arguing that the section makes two exceptions; for willful misconduct and for willful disregard of safety.

The parties will hereafter be designated as plaintiff and defendant, respectively; the Workmen's Compensation Act, being Title 42 of Utah Code Ann. 1943, will hereafter be called the Compensation Act, and Title 14 of the Utah Code Annotated will be called the Child Welfare Act. All references to Title, Chapter, or Section unless otherwise specifically noted will refer to the Utah Code Annotated, 1943. When we use the word "industry" in this opinion we mean an industry, trade, or occupation to which the compensation act applies.

(1) Was plaintiff an "employee" within the meaning of that term as used in Sec. 57, quoted supra? To put it another way, was the employment relationship between plaintiff and defendant one governed by the compensation act, and within the restrictive remedy provision of Sec. 57? This brings us to a consideration of Subdivision (2) of Sec. 41, Title 42, defining employees, which reads:

"* * * (2) Every person, except agricultural laborers and domestic servants in the service of any 'employer' as defined in subdivision (2) of section 42-1-40, who employs three or more workmen or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, *including aliens, and minors who are legally permitted to work for hire, but not including* any person whose employment is but casual and not in the usual course of trade, business or occupation of his employer. * * *." (Italics added.)

The Compensation Act, first enacted in 1917, is predicated upon the police power, the right of the state to regulate

the status of employer and employee, for the general welfare of the people of the state. *Park Utah Mines* v. *Ind. Comm.*, 84 Utah 481, 36 P. 2d 979; *Buckingham Trans.* v. *Ind. Comm.*, 93 Utah 342, 72 P. 2d 1077. It is a beneficient act, passed to protect employees, and those dependent upon them, and to tax the costs of human wreckage against the industry which employs it, such burden being added to the price of the produce and thereby spread over the general consuming users of the product of the industry. *Park Utah Mines* v. *Ind. Comm.*, supra. The general rules of liberal statutory construction govern the act, keeping in mind the purpose of its adoption. *Industrial Comm.* v. *Daly Min. Co.*, 51 Utah 602, 172 P. 301. It is to be liberally construed in favor of the injured workman. *Ogden City* v. *Ind. Comm.*, 57 Utah 221, 193 P. 857; *Chandler* v. *Ind. Comm.*, 55 Utah 213, 184 P. 1020, 8 A. L. R. 930. These are all different ways of saying that the purpose of the act is to view the workman as a part of the industrial setup and impose upon the industry the costs and burdens of the breakage, wreckage or destruction of the human part of the industrial machinery, the same as of the inanimate and mechanical parts thereof. Compensation is therefore allowed without reference to negligence, risk inherent in the tasks, or the conduct of other workmen. The only exception is that of an injury purposely self-inflicted, which by its very nature could not be the result of, or an incident of the employment. The scope of the act is broad enough to cover all injuries to any employee which arises out of or in the course of employment. Much stress has been placed on the definition of "employee" as limiting or expanding the scope and concept of that term. Let us get a clear view of the scope of the act. By Sec. 42-1-40, the term "employers" includes the state, each county, city, town, and school district therein, and every other entity in the state having an existence recognized by law, which has human beings regularly employed. The section divides employers into two classes—those upon whom the

provisions of the act are mandatory, and those upon whom the provisions of the act are optional. The optional group includes employers of agricultural and domestic laborers and employers having less than three presons regularly employed. The mandatory group includes the state and each county, city, town, and school district therein, and every person, firm, or corporation having in service three or more employees regularly employed, except the optional groups. As far as the "employer" is concerned, the term is broad enough to cover all employment relationships.

The word "employee" is defined by Sec. 42-1-41 to mean every person in the service of any of the public bodies above enumerated, including employees of state institutions of learning and every person in the service of any employer as defined in subdivision (2) of Sec. 42-1-40. Of course this means "lawfully in the service of another." We will develop this later. The only class of persons in the service of an employer specifically excluded by the language of the section from the term "employee" is that embraced within the clause

"*but not including* any person whose employment is but casual and not in the usual course of the trade, business or occupation of his employer." (Italics added.)

Subdivision (2) of the section begins:

"Every person, except agricultural laborers and domestic servants, in the service of any 'employer' as defined in subdivision (2) of section 42-1-40 * * *."

Bear in mind that "employer subject to the act" as there defined includes such employers of agricultural and domestic laborers and employers of less than three persons as shall elect to come within the act by complying therewith, that is, taking insurance, etc., so that the agricultural laborers and domestic servants, excepted from the term "employee" are those in the service of an employer who has not brought himself within the act by complying therewith. The main argument in this cause hinges about the

clause in subdivision (2) of Section 42-1-41, which after defining employee as

"Every person * * * in the service of any 'employer'" then goes on *"including* aliens, and *minors who are legally permitted to work for hire* * * *."* (Italics added.)

Does this by necessary implication exclude minors who are not legally permitted to work for hire from being "employees" within the Act, and subject to Section 57, supra?

Is the clause "including aliens, and minors * * *" a clause of inclusion, enlarging the class of persons who are "employees" within the definition of that term; or is it a clause of exclusion, put there to exclude by necessary implication minors who are not legally ■ permitted to work for hire? We think it is a clause of inclusion. Definitions of words—the scope and meaning of words—may be and generally are fixed in terms of that which is *included,* and that which is *excluded.* The term "employee" is declared to mean every person, including minors, who is lawfully in the service of another, but shall not include a person whose employment is but casual and not in the usual course of the employer's trade or business.

The compensation act, in as far as it applies to employment of minors, must be construed in conjunction with the Child Welfare Act. This Act, Sec. 14-6-1, contains a positive prohibition of the employment in industry of minors under 16 years of age, subject to certain ■■ specified exceptions, by that section provided, which exceptions do not include laundry work. Sec. 14-6-5 prohibits any minor under 18 years of age from being employed in connection with any occupation except agrricultural work, domestic service or casual work at the home of the employer, and not connected with the business trade or occupation of the employer until he has first secured and filed with the employer an employment certificate issued pursuant to Secs. 14-6-6 and 14-6-8. Secs. 14-6-2, 14-6-3 and 14-6-4 contain further limitations on the hours, place and

type or kind of employment àt which even a minor with an employment certificate may be employed. The general scope and effect of Chapter 6 is to prohibit and render unlawful the employment in industry of minors under eighteen years of age. The specific exceptions made in the sections noted above are the only instances in which a minor under 18 years of age can be lawfully employed in industry. Since the rule of the statutes is to prohibit a minor under 18 from being employed in industry, to keep him from being an "employe" in industry, the legislature expanded the definition and meaning of "employee" to include "minors who are legally permited to work for hire." This clause then was written as an inclusion clause to remove doubt as to such minor being in an employment status covered by the compensation act, and not as an exclusion clause to exclude by implication other minors under 18 who are already excluded because prohibited directly by the Child Welfare Act from being employed at all in industry. Being prohibited from employment in industry, they could not be in the employment relationship or status which is covered by the exclusive remedies provision of Sec. 42-1-57 of the Compensation Act.

It must follow therefore by virture of Chap. 6, Title 14, except in the services specifically named in Sec. 14-6-1, that a minor under sixteen years of age cannot enter or be in the employer-employee relationship or status to which the exclusive remedies provisions of Sec. 42-1-57 apply; and that no minor under 18 years of age can be in such status or relationship unless the employer has on file a proper employment certificate issued pursuant to the provisions of Chap. 6. *Roszek* v. *Bauerle & Stark Co.*, 282 Ill. 557, 118 N. E. 991, L. R. A. 1918F, 207, 16 N. C. C. A. 1063; *Taglinette* v. *Sydney Worsted Co.*, 42 R. I. 133, 105 A. 641; *Stetz* v. *F. Mayer Boot & Shoe Co.*, 163 Wis. 151, 156 N. W. 971, Ann. Cas. 1918B, 675; *Perry* v. *Tozer*, 90 Minn. 431, 97 N. W. 137, 101 Am. St. Rep. 416.

A further reason for holding the expression "including * * * minors who are legally permitted to work

for hire" to be an inclusion clause to definitely bring such minor within the meaning of "employee" rather than an implied exclusion of "minors not legally permitted to work for hire," is found in Sec. 42-1-83. Under the law as it prevails in this state, a parent is entitled to the services of minor children and to recover in his own name and right compensation for services rendered for another by a minor child. In the absence of statute to the contrary a minor cannot in his own name and right maintain an action on such contract, although the employer is protected against claims of the parent if he pays the wages to the minor. Sec. 14-1-4. In short, generally speaking a minor is just sui juris, and could not, in his own name and right exercise options, make binding contracts or maintain or prosecute a claim or action for wages or injuries. To enable minors not under statutory prohibitions to enter into lawful contracts for the rendering of personal service, and assure such minor, and incidentally the employer, the same protection as an adult rendering like service, Sec. 42-1-83 was enacted. This section provides that minors working at an age permitted by law shall be deemed sui juris for the purposes of this title, and no other person shall have any cause of action, or right to compensation for an injury to such workman. To insure harmony between this provision and Sec. 42-1-41 and remove any doubt that such minor under 18 is to be treated as an "employee under the protection of the Compensation Act," the term employee was expressly made to include "minors who are legally permitted to work for hire  *  *  *"— that is, so it would include all persons who under the law applying to the act were sui juris. Minors legally permitted to work for hire are put in the same position before the law as adults. All minors not legally permitted to work for hire are still under the disability of minority, in that they are not sui juris even for the purposes of the Act, and are not to be considered as limited in their remedies by the provisions of Sec. 42-1-57. A provision to the same effect is found in the statutes of many states. The Rhode Island

court in *Taglinette* v. *Sydney Worsted Co.*, supra, applying a statute (Chap. 1378, Sec. 1, Clause 1, Pub. Laws R. I. 1916) identical with our Sec. 42-1-83, said it was to be construed in connection with the section prohibiting employment of a minor under 16 years of age without an employment certificate. Their statute regarding employment certificates is the same as ours except that their statute fixed the age at sixteen and ours at eighteen years. Sec. 14-6-5. Going on the court said [42 R. I. 133, 105 A. 642]:

"The language of our act, 'A minor working at an age legally permitted under the laws of this state shall be deemed sui juris' is apparently employed in no similar act except in Ohio, where the Supplemental Act (effective January 1, 1914), in amendment of the Workmen's Compensation Act, employs the identical language of our act. See Honnold on Workmen's Compensation, vol. 2, 1487, § 46. In *Acklin Stamping Co.* v. *Kutz*, 1918 [98 Ohio St. 61], 120 N. E. [229], 231 [14 A. L. R. 812], it is held that, if illegally employed a minor 'would not be an employe within the meaning of that term' in the Compensation Act. Inasmuch as the Compensation Act is silent as to the age when a minor is permitted to work, it is obviously necessary that this provision must be construed in connection with section 1 of chapter 1378. Doing this, we are of the opinion that the first ground of defendant's demurrer is not well founded. As already appears, clause 2 of section 1 of chapter 1378 provides that 'no child under sixteen years of age shall be employed or permitted or suffered to work in any factory,' unless the employe has in his possession an age and employment certificate. Hence the employment of a child of 14 without such certificate is expressly prohibited, and therefore unlawful. If the statute without qualification named 14 years as the age at which minors are legally permitted to work, then the construction claimed would unquestionably be correct. But since the statute prohibits employment below the age of 16, unless the employer has a certificate in his possession, then, in our opinion, it must be held that a minor, working in a factory at the age of 14, when there is no certificate in his employer's possession, is not working at an age legally permitted under the laws of this state. To state it otherwise, the word 'age' in the citation from section 6 of article 1 of the Workmen's Compensation Act is to be construed in the light of the condition expressed in section 1 of chapter 1378, affecting and determining the legality of the employment of a minor 14 years old."

The Washington statute is to all purposes the same as ours. Under the Michigan statute (Pub. Acts 1912, Ex. Sess., No. 10, Pt. 1, Sec. 7, page 2) the term employee includes

"minors who are legally permitted to work under the laws of the state who, for the purposes of this Act, shall be considered the same and have the same power to contract as adult[s]."

The Minnesota statute (Laws 1913, c. 467) gives minors legally permitted to work the status of adults with respect thereto, and includes them in the term employee. So likewise in Nebraska (Laws 1913, c. 198, Pt. II) ; Ohio (Laws 1913, p. 72, Sec. 1465-61) ; Oregon (Laws 1913, c. 112, Sec. 22) ; Wisconsin (Laws 1913, c. 707). These statutes as well as those of many other states indicate that minors who are legally permitted to work for hire are included in the term employee, because with respect to such work, they are by statutory provision, emancipated from the disability of minority and given the rights and status of adults. The courts of states having such provisions have consistently stressed the fact that such minors are *included* in the term employee because under the statutory provisions they are emancipated for permitted employments from some of the restrictions of minority. In *Curt* v. *Ind. Comm.*, 226 Wis. 16, 275 N. W. 447, 448, it is said:

"It is urged that the provision vesting minors with the power to contract was merely to permit them to become employees of persons other than their parents. This contention cannot be sustained. It is true that the act is not effective to give a wholly unemancipated minor the right to treat himself as the employee of his father. Whether, however, there has been an agreement on the part of the parent to pay wages and to permit the minor child to keep them, the minor is entitled, under the Compensation Act, to the status of employee. The contention that this violates the policy of *Wick* v. *Wick*, supra [192 Wis. 260, 212 N. W. 787, 52 A. L. R. 1113], cannot be sustained. The liability is statutory and does not sound in tort. The act is a broad, comprehensive piece of social legislation designed to ameliorate the injustices of the industrial system generally, and to put upon industry its share of the burdens created by it. Minors are expressly given the same power to contract as adults.

Having been sufficiently emancipated to enter an enforceable contract of hire with his father, it is clear that he became an employee and that the benefits of the act follow his status as such."

And in *Borgnis* v. *Falk Co.*, 147 Wis. 327, 133 N. W. 209, 221, 37 L. R. A., N. S. 489, we read:

"Some contention is made in the brief that minors cannot be treated in the same manner as adults, and that the provision of the law which declares that a minor who is legally entitled to work shall have the same power of contracting for service as an adult is objectionable, because it allows the employer to decide whether the law shall treat his minor employes as adults. The objection seems to us fanciful and elusive. There is no claim that the Legislature may not endow minors with the right to make contracts otherwise lawful, and, if this be so it seems to us to be the end of the discussion. After the minor is so endowed, he becomes for the purposes of the act an adult, or at least on the same plane."

And in *Roberts* v. *Hillsborough Mills*, 85 N. H. 517, 161 A. 29, 30, the court held that where the statute did not expressly confer upon a minor the status of an adult, such status would not be inferred. The court said:

"There is nothing in the statute indicating any purpose to bestow upon minor workmen power to act sui juris. * * * The use of the general term 'workman' and 'workmen' to designate the beneficiaries of the act carried by implication no enabling power to one incompetent to act in his own behalf. On the contrary, the power to petition the court for relief upon failure of the employer to make compensation under the act is expressly given to 'the injured workman or his guardian, if such be appointed.' * * * Like power is given the guardian of 'an injured workman' who 'shall be mentally incompetent.' * * * Not only by the absence of any enabling provision, but by implication from its express terms, the statute leaves workmen who are infants or non compos mentis to the enforcement of their remedies thereunder in the manner in which such rights are customarily asserted. It discloses no intention to trench upon the protection which the present day common law affords to the incompetent."

In *Menominee Bay Shore Lumber* v. *Ind. Comm.*, 162 Wis. 344, 156 N. W. 151, 152, we read:

"Sec. 2394-7, subsection 2, Stats., provides that minors 'who are legally permitted to work under the laws of the state' 'for the purposes

of Sec. 2394-8 shall be considered the same and shall have the same power of contracting as adult employes.' It is quite significant that minors, mentioned, for the purposes indicated, are not only empowered to contract to the same extent as adults, but are, for all such purposes, to be considered the same as adults."

The Attorney General of Minnesota, in an opinion referred to in 6 N. C. C. A. 764, construing the Minnesota Act, said:

"Much must depend upon what weight should be given to the term 'employee.' Fortunately, this law affords considerable aid in determining that question. By referring to subdivision 2 of Sec. 34 of the Compensation Act, this language is found. 'Every person including minors who are legally permitted to work under the laws of this state, shall be deemed an employee.' Therefore the converse of this rule must be true, to wit: that if a minor is not legally permitted to work under the laws he would not be considered as coming within the provisions of the Compensation Act."

As will be seen from the various statutory provisions referred to above, in the greater number of states in which the Compensation Acts are made to include minors, the inclusion is limited to such minors as are legally permitted to work under the laws of the state. Even in the absence of express limitation it is hardly probable that courts would construe a general provision making a Compensation Act applicable to all employees as affecting the liability of the employer and the right of the employee growing out of an employment which contravenes the Child Labor Laws. The object of such laws is threefold: To prevent persons of immature judgment from engaging in hazardous occupations; to prevent employment and overwork of children during the period of the physical and mental development; and so far as the law is able, to prevent a competition between weak and underpaid labor and mature men who owe society certain obligations of citizenship and the obligation to maintain and support their families. To effectuate the purposes and intentions of the Child Welfare Act it is necessary that we hold that one who employs a minor under 18 years of age should be prepared

to show in all cases that the child is employed lawfully before limitations are placed upon the child's rights or remedies. In *Swenson* v. *National Carton Co.*, Ill. Ind. Bd. Sept. 3, 1914, Note 6 N. C. C. A. 769, a motion was made to dismiss a claim for compensation for death of a minor. In granting the motion it was said:

"It also appears that the deceased was not of sufficient age under the law to enter into a contract of employment for wages. Upon this question this Board is of the opinion that if one is not competent to contract concerning his wages that the general law of the land with reference to minors and incompetency applies. And one who employs a minor or person incompetent to contract cannot invoke any of the provisions of the Workmen's Compensation Act, because such employee can in no wise or from any standpoint be bound as having accepted the terms and provisions of the Workmen's Compensation Act, and if this relation does not exist this Board has no jurisdiction to determine the question of compensation on petition of respondent and therefore the motion to dismiss the cause is allowed."

The weight of authority is to the effect that the restrictive provisions of the Compensation Act apply only to such employments as are legal; that it cannot be assumed that the legislature would, even if it could, throw around an employer the shield of protection against liabilities on contracts of employment which are in derogation of the declared legislative policy of the state regarding the protection of its people. How then can we conceive that the legislature intended to shield an employer against liabilities arising from a relationship or situation which the statute has expressly forbidden him to create? Since the legislature has prohibited the employment of minors under 18 years of age, it is inconceivable that in almost the same breath, it would include such employments as favored ones before the law, and give to the employer violating the express prohibition, all the securities extended to the employer who complied with all the provisions of law. We find no state that has done so. California cases, it is true, hold that all minors who are injured in industry are limited by the act, even though such employment of minors be pro-

hibited, but such holding is based upon the express provisions of its statute which defines "employee" as "including minors" without any limitations whatever. Perusal of the cases leads to the conclusions that were the definition of "employee" in their statute the same as ours, a different conclusion would have been reached by the courts.

By the great weight of authority, illegally employed minors are not within the Workmen's Compensation Act. See annotations, 14 A. L. R. 818; 33 A. L. R. 338; 49 A. L. R. 1436; 60 A. L. R. 848. However, because of differences in statutes, most of the cases cited therein are not in point in a case involving interpretation of the Utah act. Illinois, Ohio, and Minnesota have in their compensation acts a similar definition of employee, and it has there been held where the employee includes "minors who are legally permitted to work" that the minor illegally employed is not within the provisions of the workmen's compensation act. *Pettee* v. *Noyes*, 133 Minn. 109, 157 N. W. 995; *Westerlund* v. *Kettle River Co.*, 137 Minn. 24; 162 N. W. 680; *Gutmann* v. *Anderson*, 142 Minn. 141, 171 N. W. 303; *Zurasky* v. *Handycap Co.*, 210 Ill. App. 254; *Kowalczyk* v. *Swift & Co.*, 329 Ill. 308, 160 N. E. 588; *Messmer* v. *Industrial Bd. of Ill.*, 282 Ill. 562, 118 N. E. 993; *Acklin Stamping Co.* v. *Kutz*, 98 Ohio St. 61, 120 N. E. 229, 14 A. L. R. 812.

In *Rogers* v. *Traders & Gen. Ins. Co.*, 135 Tex. 149, 139 S. W. 2d 784, 787, 128 A. L. R. 1305, the question was again discussed, the court saying:

"In 12 Am. Jur. Contracts, Sec. 163, it is stated: 'It appears that all courts agree that where a statute was enacted to protect the public against fraud or imposition or to safeguard the public health or morals, an agreement in violation thereof is ordinarily void.'

"That is a sound and wholesome principle and a strict adherence thereto will promote the public good. An important question of public policy is involved, and the Legislature had determined the policy in this State in that regard. It could hardly be thought that the Legislature would have enacted a Workmen's Compensation Law, not only for the benefit of industry and employees, but for the public benefit as well, and at the same time have intended that it

should be made applicable to persons whose contracts of hire were forbidden by law. More particularly is this true when, as here, the statute violated by the contract of hire was enacted for the protection of the public health. We cannot ascribe such an intent and purpose to the legislature."

And in 71 C. J. 1486, we read:

"Violation of Child Labor Laws. Although there is authority to the contrary, it is generally held that employment of a minor in violation of the child labor law places him outside the terms of the compensation act and entitles him or his administrator to sue for damages for the injuries or death, notwithstanding the employer's acceptance of the act * * *."

Defendant cites *Clark* v. *White*, 197 Wis. 597, 222 N. W. 823; *Milwaukee News* v. *Ind. Comm.*, 224 Wis. 130, 271 N. W. 78; and *Town of New Holstein* v. *Daun*, 191 Wis. 93, 209 N. W. 695, as recent decisions holding compensation to be the only remedy. In the first two cases, the minor came strictly within the definition of an "employee" in the statute, and so they are not in point. The third case supports the view taken in this opinion.

We hold therefore that a minor not legally employed is not in an employee status or relationship to which the restrictive provisions of Sec. 42-1-57 apply.

Was the plaintiff a minor not legally employed? The ruling assailed being on demurrer, we assume the allegations of the complaint to be true. They show plaintiff was a girl of fourteen years of age; that she was employed by defendants to work in a laundry, an industry in which minors under sixteen years of age are prohibited from working at any time, and that on the date of the injury she was assigned and ordered to work on powerdriven machinery, all in violation of the statute. Since the statute expressly declares that no minor under sixteen shall be employed, permitted, or suffered to work on or in connection with power-driven machinery, and prohibits a child under sixteen from working in a laundry, it follows that at the time of the accident she was not

legally employed. It is argued that under the terms of the section last above cited, the plaintiff could have been legally employed in the office outside of school hours, and the complaint does not contain an allegation that such was not her regular employment, and that for all the allegations of the complaint show, her work at the mangle may have been merely a very temporary assignment in relief of another employee; and that if such were the case, her employment by defendants would have been lawful, and the temporary diversion to the mangle would not take her out of the class of "a minor legally employed."

There are three answers to this contention either of which is sufficient. In the first place, the complaint alleges she was employed to work "in a laundry, in a line of work prohibited by Sec. 14-6-1, and assigned to work on a mangle," which is certainly sufficient against general demurrer and argument that she might have been employed in the office. In the second place, as shown elsewhere in this opinion, when the statute prohibits employment of minors in industry except in limited cases, the burden is upon the employer to show the employment was a lawful one. Finally, even if she had been employed to work in the office, the only place of work about a laundry which could possibly legally employ a minor under sixteen years of age, when she was transferred, even though temporarily, to work at or in connection with power driven machinery which the statute positively prohibits under any circumstances, such action was in violation of the positive mandate of the statute. The section not only prohibits employment of such minor for such work, but deals .with temporary situations. It reads:

"No minor under sixteen years of age shall be employed, permitted, or suffered to work in, or about, or in connection with any gainful occupation * * * *provided,* that no minor under 16 years of age *shall at any time* be employed, *permitted or suffered to work* on or in connection with power-driven machinery of any kind * * *." (Italics added.)

By such language the legislature must have meant to make employment of minors under 16 legal employment only while they were engaged in doing a task which the statute expressly provided such minor could legally be employed to do. Considering these provisions in connection with other provisions of Sec. 14-6-1, as amended by Chap. 15, Laws of Utah 1943, prohibiting the employment in industry of minors under sixteen years, except in certain specific lines of non-hazardous employment, is it not a fair interpretation to say that the words "minors who are legally permitted to work" refers to the work being performed at the time of the accident, rather than to the legality of the employment generally? It would seem beyond doubt that when employment was changed from such work as was legal, to such as was expresslf prohibited by law, the minor was no longer legally employed. The Michigan court said in *Kruczkowski* v. *Polonia Pub. Co.*, 203 Mich. 211, 168 N. W. 932, 933:

"The law seems to be that, where a child has not attained the age at which he may lawfully be employed in the occupation or work in which he is injured, he cannot be regarded as an employe within the provisions of the Compensation Act."

In *Waterman Lumber* v. *Beatty*, Tex. Civ. App., 204 S. W. 448, the court held, under a state of facts which involved a change of work, that the compensation act applied only to valid employment, and suit would lie when plaintiff was injured at work he could not legally be employed to perform. See also *Wolff* v. *Fulton Bag & Cotton Mills*, 185 App. Div. 436, 173, N. Y. S. 75; *Secklich* v. *Harris-Emery Co.*, 184 Iowa 1025, 169 N. W. 325; *Acklin Stamp Co.* v. *Kutz*, supra; *Lostutter* v. *Brown Shoe*, 203 Ill. App. 517; *Messmer* v. *Ind. Comm.*, supra. *Pettee* v. *Noyes*, supra; *Taglinette* v. *Sydney Worsted Co.*, supra; Annotation in 49 A. L. R. 1440; *Kowalczyk* v. *Swift & Co.*, supra. Wisconsin courts hold differently, the rule there being that if a child is legally permitted by statute to work at all, he is within the compensation act, even though injured in pro-

hibited employment. *Foth* v. *McComber & Whyte Rope Co.*, 161 Wis. 549, 154 N. W. 369, 11 N. C. C. A. 599; *Green* v. *Appleton Woolen Mills*, 162 Wis. 145, 155 N. W. 958. But the weight, and we think the better reasoning supports the position we have taken.

It is vigorously urged that even though plaintiff was not an employee subject to the restrictive provisions of Sec. 42-1-57, nevertheless she cannot maintain ▇▇▇ a civil action for damages, but is limited to proceeding before the Industrial Commission by virtue of Sec. 14-6-27, which reads:

"In the event of accidental injury to a minor who is found upon investigation to be illegally employed by an employer subject to the provisions of the compensation law, *said minor shall not be debarred from receiving compensation, but shall be entitled to double the compensation to which he would be entitled if legally employed;* provided, that the insurance carrier shall be liable for all reasonable medical and hospital expenses incurred in healing the injury, plus one-half of the compensation to be paid, and the employer shall be liable for the additional one-half of said compensation as a penalty for the illegal employment of said minor." (Italics added.)

The contention is that by virtue of the phrase we have italicized plaintiff is limited to the double compensation therein provided; and *Royal Canning Co.* v. *Ind. Comm.*, 101 Utah 323, 121 P. 2d 406, is cited as authority for this position. That case does not sustain defendants' contention. The question as to the exclusiveness of the double compensation as sole remedy was not there involved. In that case the minor applied for compensation under Sec. 14-6-27, and was granted double compensation. Her right to compensation was not questioned, the only question being as to whether she was entitled to have it double. The factual situation was also different. There the minor was employed at work at which she could lawfully be employed, but the employee did not have or file the necessary employment certificate. In the instant case the minor could not be employed in the laundry under any circumstances.

Since we have held that a minor, not legally employed under the provisions of the Child Welfare Act, is not within the exclusive remedies provision of Sec. 42-1-57, it follows that unless Sec. 14-6-27 makes double compensation the exclusive remedy for such minor, plaintiff would still have the right to proceed by civil action. The language of the section is not itself exclusive. It does not say that the remedy shall be double compensation, nor does it provide that the minor shall be bound by any provision of the compensation act. It says that the "minor shall not be *debarred from receiving compensation*"—that is, the employer, being himself under the Compensation Act, cannot urge his own act in illegally using the services of a minor as a defense to a claim for compensation in case of injury. In other words, it gives the minor the privilege of taking compensation instead of pursuing civil remedies. This section does not create a new right or a new liability. It merely provides a new remedy for an already existing right. A like choice of remedy is given the employees of a non-complying employer. Sec. 42-1-54; *Peterson* v. *Sorensen*, 91 Utah 507, 65 P. 2d 12. The general rule is that such remedy is not to be regarded as exclusive, but as an additional remedy. When a statute gives a new and affirmative remedy, but does not negative, expressly or impliedly, any existing remedies, the new remedy is to be considered merely cumulative. *State* v. *Barboglio*, 63 Utah 432, 226 P. 904. See also note in 1 C. J. S., Actions, § 6, p. 976. For other cases see Utah & Pac. Digest, Action, Key 35. Said the Wyoming court in *Urbach* v. *Urbach*, 52 Wyo. 207, 73 P. 2d 953, 961, 113 A. L. R. 889:

"Remedial statutes are presumed to provide remedies in addition to those which existed at common law and equity, unless a clear intent is expressed to make the statutory remedy exclusive."

This contention is resolved against defendant.

Since plaintiff was not an employee, in a status or employment relationship to which the restrictive provision

of Sec. 42-1-57 applies; and has a choice of remedy under Sec. 14-6-27, the second point she raises, that she can maintain this action under Sec. 42-1-57 becomes moot and therefore we should not discuss it.

The complaint states a cause of action. The judgment is reversed and the cause remanded to the District Court with directions to overrule the demurrer and proceed in regular order.

Costs to appellant.

McDONOUGH and TURNER, JJ., concur.

WADE, Justice (concurring in result).

I concur with the result. I, however, think that Sec. 42-1-41, Sub. (2) U. C. A. 1943, by expressly including "minors who are legally permitted to work for hire," implied a legislative intention to exclude from the provisions of the act minors not legally permitted to work for hire. On this ground I concur with the result reached in the prevailing opinion.

WOLFE, Justice (concurring in result).

I concur in the results and most of the reasoning. Much that has been said in the prevailing opinion seems unnecessary to the conclusion. The question is well posed at the beginning of the opinion. "Is the Workman's Compensation Act the exclusive remedy" for injury suffered by a minor in the course of his employment when illegally employed?

This question it seems to me is to be resolved by a reading together of the first part of Sec. 42-1-57, U. C. A. 1943, without the proviso which has nothing to do with the facts of this case, and subsection 2 of Sec. 42-1-41 and Sec. 14-6-27, U. C. A. 1943. It may well be that the purpose for expressly including minors legally permitted to work within the Compensation Act was to make such minors sui juris for the purposes of the Act and thus

remove for that purpose the bar of infancy in creating the contractual relationship, although it would seem that such result would follow if the provisions of Title 14, Chapter 6 which gave a right to employ minors under certain circumstances were complied with without a definite inclusion in the Compensation Act. But conceding that the legislature wanted to make it clear beyond doubt that legally employed minors were sui juris as far as the Compensation Act is concerned, it follows by necessary implication that minors illegally employed were excluded from the benefits of the act. Being excluded they have their common law remedy for injuries due to negligence. I agree in the conclusion that Sec. 14-6-27, U. C. A. 1943, lowered the bars and permitted but did not require illegally employed minors to resort to the compensation act. The common law remedy still remained. Sec. 14-6-27 was intended to permit illegally employed minors who could not found a case on negligence to resort to compensation, the double purpose thus being to give such child some measure of compensation for injury in all events and to prevent an employer who illegally employed a minor from completely escaping payments where the law emphatically prohibited them from being employed. The minor might be helpless to prevent himself from being illegally employed. The duty of refraining from employing was on the master and not on the child. The child was not to be at a disadvantage because during the illegal employment, he or she was injured without actionable negligence on the part of the employer.

I further agree that even if the employment was entirely legal, permitting or requiring the minor to work at a prohibited place or task makes that part of the employment illegal employment. In *Royal Canning Co.* v. *Ind. Comm.*, 101 Utah 323, 121 P. 2d 406, the minor elected to take compensation by applying for it. If the minor was in that case illegally employed only because she did not have a certificate, then it must follow that she could have sued had she so elected, for otherwise she should not have been granted double compensation.